## WHITNEY JONES *vs.* WING and DEAN.

Third Circuit.

Where an allegation is made in the bill with divers circumstances, the defendant should not by his answer deny the allegation literally as laid in the bill, but should answer the point of substance positively and certainly.

W. and D. being merchants, J. entrusted them with goods to sell on his account. W. and D. afterwards proposed to purchase the goods of J. and convey certain lands in payment therefor. Six hundred and fifty acres of which they represented to be good pine lands averaging forty pine trees to the acre from two and a half to five feet through, and that there was a good mill site thereon, with six to eight feet full of water. J. sold the goods to W. and D., and took a conveyance of the lands, relying upon the representations of W. and D., and without ever having seen the same, and it turned out that the representations were not true, and that there was pine timber upon but about one fourth of the land, and upon that not much more than one half the quantity represented upon a bill filed for that purpose. This court declared the contract rescinded and decreed a re-delivery of the remaining portion of the goods, and awarded to J., the complainant, the re-payment to him of the value of the goods which had been sold by W. and D., and that until the payment should be made, J. should retain a lien upon the lands as a security for the amount due him for the goods which have been sold.

Jones
*vs.*
Wing and
Dean.

Bill to rescind a contract on the ground of fraud. The statament of the case is sufficiently given in the opinion of the court.

PRATT and LEE, for complainant.

The conduct of the parties shows the merits of the case. The complainant so soon as he saw the lands told the witness, Lyon, that he had been cheated, and would have redress, and immediately on his return to Marshall, and meeting the defendant, Deane, he asserted his rights—declared himself to have been injured, and declared that he should apply to the laws for redress.

This he has done, and what is the duty of this court ?

No complex questions of artificial rights at law arise to interfere with the direct application of the principles of equity. The jurisdiction of the court is unquestioned, equity will always take cognizance of fraud, and grant relief where it is proven to exist. The peculiar and special power of the court is also properly invoked in compelling an account of the property received, and a cancelling of the conveyance to the complainant.

The fraud in this case was in a material point, the complainant

Third Circuit.

Jones
vs.
Wing and
Dean.

trusted to it and was mislead.   He is therefore entitled to relief—
*Evans* vs. *Bicknell, see* 6 *Ves.* 173, 1822, 1 *Bro. Ch. R.* 546 ; *Jacob Rep.* 178 ; 1 *Fonbl. Eq. B.* 1, *Ch.* 228 ; 1 *Story Eq.* 201.

Whether the defendants knew their representations to be false, or made the assertions without knowing whether they were true or false, is immaterial, for the affirmation of what one does not know or believe to be true, is equally in morals and in law as unjustifiable as the affirmation of what he knows to be positively false.   *Aenslee* vs. *Modlecott,* 9 *Ves.* 21; *Graves* vs. *White Freem, R.* 57 ; *Pearson* vs *Morgan*, 2 *Bro. Ch. R.* 389.   And even if the party *innocently* misrepresents a fact by mistake it is equally conclusive ; for it operates as a surprise and imposition on the other party.   2 *Bro. Ch. R.* 389, *Burrows* vs. *Loche,* 10 *Ves.* 475 ; 1 *Ves. and B.* 355 ; 3 *Ves. and B.* 111.

Fraud and damage coupled together will entitle the injured party to relief in any court of justice.   7 *John Ch. Rep.* 201.

The consideration of the deed is $5,500; the complainant is entitled to a decree for this, to have such of the goods as are on hand and unsold restored to him—their value to be ascertained and to have a personal decree against the defendants for the remainder, and until that be paid to retain his lien on the bond, and if the balance be not paid to him, that he may sell the land and have execution against the defendants for the deficiency if any.

Woodruff, for defendants.

Lord Hardwicke thus enumerated the several kinds of frauds relievable in a Court of Equity.

*First.* Fraud which is *dolus malus* may be actually arising from facts and circumstances.

*Second.* It may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under delusion would make on the one hand and as no honest and fair man would accept on the other.

*Third.* Fraud which may be presumed from the circumstances and condition of the parties contracting, and this goes further than the rule of law, which is, that it must be proved not presumed, but is estab-

lished in the Court of Chancery to prevent taking advantage of the weakness or necessity of another.

*Fourth.* Fraud which may be collected and inferred in the consideration of a Court of Equity from the nature and circumstances of the transaction as being a deceit on other persons not parties to the fraudulent transaction.

*Fifth.* Fraud in what are called catching bargains with heirs, reversioners or expectants in the life of the parents. 2 *Ves.* 155 *cited*, 1 *Story's Equity* 198.

If these distinctions are well made, it cannot be contended that the present case is sustainable in any other point of view than that of fraud or *dolus malus*.

The rule of the civil law—*dolum ex indiciis perspicuis probari convenit. Cod. Lib.* 2 *Tit.* 21, *l.* 6, *cited* 1 *Story's Eq.* 199, is thus translated and adopted in our own jurisprudence. "Fraud shall not be presumed in law or equity without manifest proof." 3 *Cases in Chan.* 85, 110, *Comyn Dig. Tit. Chancery.*

Circumstances of mere suspicion without leading to certain results will not in either court be deemed a sufficient ground to establish fraud. 1 *Story Eq.* 200, and cases there cited.

If the representations of the defendants were not fraudulent, then the bill is not sustainable. If what the defendants said is consistent with a mistaken judgment as to the quantity of pine and a water power, and a fraudulent intent and act is not *clearly proved*, the complaint is not made out, and no rule of equity can be shown which will relieve the complainant from making out a clear case of positive fraud in this case. Notwithstanding what is said in *Story* 1 *Eq.* p. 202, *citing Burrows* vs. *Locke*, 10 *Ves.* 475, *De Mannville* vs. *Compton* 1 *Ves. and B.* 355 *Exparte Law* 3 *Ves. and B.* 111, &c. it will be seen by reference to those cases that the above distinctions of Lord Hardwicke are not gainsaid, but are in fact sustained in the particular cases.

The statement must be of fact and not of opinion. 1 *Story's Eq.* 206.

THE CHANCELLOR.—The bill in this case charges that the com-

Third Cir-
cuit.

Jones
*vs.*
Wing and
Dean.

plainant (a resident of New York,) on the 1st of October, 1839, had at Marshall, in this state, a large quantity of goods.

That Wing and Dean, (the defendants,) were then merchants at Marshall, and that the complainant entrusted a part of the goods to them to be sold on his account.

That they proposed to buy the goods of the complainant, and pay for them in lands in the county of Clinton, and with a view to induce the complainant to take the lands, made to him the following representations : That of the one thousand two hundred acres, the northern six hundred and forty acres were the most valuable pine lands in the state ; that they would average from seventy to ninety trees per acre, and those from two and a half to five feet in diameter. That they had actual knowledge of the quality of the lands from their own examinations, and that they would warrant there were forty trees per acre on the six hundred and forty acres. And that they also stated that there was a good mill site, by which a fall of six or eight feet could be obtained on Maple river.

The sale was consummated on the eighteenth of December ; the complainant soon after went to examine the lands, when he found as is alleged, that out of the six hundred and forty acres there was not more than one hundred and fifteen acres of pine timber.

The complainant returned to Marshall in the month of February following, and saw the defendant Dean, to whom he immediately represented that he had been defrauded, and demanded restitution, which was refused.

The principal point in the case is, as to the representations made respecting the quality of the lands.

The answer of the defendants admits the sale of the goods for the consideration stated in the bill. They deny that they represented the six hundred and forty acres as the most valuable pine lands in the state, and that they would average from seventy to ninety trees per acre, and that they would warrant there were forty pine trees to the acre, from two and a half to five feet in diameter on the whole 640 acres. It is proper here to say, that the answer in this respect is not entirely satisfactory. If an allegation is made with divers circumstances, the defendant should not deny it literally as laid in

the bill, but should answer the point of substance positively and certainly.

The defendants in their answer further say, that of the eight lots they stated that four certainly had pine timber on them, on another they thought there was pine, but were not sure ; that they had examined five, perhaps six, of the lots the summer before, but had not examined the other two. That in December 1839, they told the complainant in the presence of Samuel Camp and R. B. White, that as they thought there were 40 pine trees on an acre on the land where the pine grew. There are other allegations in the bill, which are totally denied. There is a great discrepancy between the bill and the answer, and we are compelled to resort to the testimony, to ascertain the character of the representations concerning the land which is the principal subject of controversy.

The answer of the defendants refers to statements made in the presence of White and Samuel Camp. Mr. Camp says "that Mr. Dean stated that, that land of their's up north would average from sixty to ninety pine trees per acre, from two and a half to five feet through, and from sixty to ninety feet to the limbs ; and this conversation was had but a day or two before the bargain was consummated." This testimony is substantially corroborated by that of White, and in some respects the testimony of White is still stronger. On being asked what proportion of the lots did Wing and Dean represent as having pine on them, he replied, that the expression was unqualified; and it was, that the pine lands would have from sixty to ninety trees to the acre ; and one of the defendants said he thought he would not be afraid to warrant forty trees to the acre. On being asked if the defendant referred to the whole or a part, says he did not refer to any particular part.

The testimony of George E. Savage alone sustains to some extent the ground taken in the answers. He left Marshall some time before the conversation referred to by Camp and White, and before the bargain was closed. He was examined a long time after the transaction took place. But admitting his testimony to be substantially true, if the testimony of Samuel Camp, White, and Hermon Camp of subsequent conversations is also taken as true, (and I do not see how it can be avoided,) it would not change the result.

The testimony of Hermon Camp of the conversation which took place at the time of the delivery of the deed is important. At this time, it would appear by the testimony of this witness, the defendants assured the complainant that there were six hundred and forty acres of good pine land, which would average forty trees to the acre. He further states that Jones said he had never been on the land, and that he depended on the statement of the defendants.

There can be no doubt that the lands turned out to be very different from such lands as the complainant would naturally have been led to expect from these representations. The witnesses vary somewhat as to the quantity of pine lands. One of the witnesses states that there may be in all one hundred and seventy acres of pine, but of a quality inferior to the representations. Another from one hundred and eighty to one hundred and eighty-five, averaging from eighteen to twenty-two trees to the acre. Another witness states the quantity at sixty acres of good pine. The other witness, Lyon, says there may be one hundred acres of pretty fair pine land, averaging about twenty trees to the acre.

It would seem that but about one-fourth of the land has pine timber upon it, and upon this not much more than half the quantity which the complainant would have been led to expect from the representations made ; and the complainant was a stranger, who had not seen the lands, and who relied upon the representations of the defendants. Whether these representations were made knowing that they were untrue, or were made without knowing, whether they were true or false, the effect upon the complainant is the same, and the consequence which must follow, must be the same.

The complainant as appears from the case, trusted to them and was misled. Some other points were made in the case, but as their consideration cannot vary the result, it is not necessary further to refer to them.

The only doubt I have had in the case has resulted from a slight degree of suspicion from the great degree of confidence which seems to have been reposed in the defendants by the complainant, that he may have seemed to rely on these representations, with a view to a resort to this mode of redress ; but there is not sufficient shown in the case to authorize this conclusion, and I think it is not so ; and

there is no alternative left to the court but to declare the contract rescinded, and to decree a re-delivery of the remaining portion of the goods to the complainant, and award the re-payment to him of the value of the goods which have been sold by the defendants, and to decree that until this payment shall be made, he shall retain his lien upon the lands as a security for the amount due him for the goods which have been sold.

Decree accordingly.

*Note.* An appeal was taken in this case to the Supreme Court.